# **<u>EXHIBIT A</u>**

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Settlement Agreement") is entered into as of this 20th day of January, 2017, by and between Citadel Energy Services, LLC ("CES"), H2O Partners, LP ("Plaintiff") and EIG5, LLC ("EIG5," collectively with CES and Plaintiff, the "Parties," and each individually, a "Party").

**WHEREAS**, Plaintiff transferred certain assets to Citadel H2O, LLC ("Citadel H2O") to enable Citadel H2O to buy certain groundwater permits, leases and contracts (collectively, the "Water Assets") for the benefit of Plaintiff;

**WHEREAS**, CES filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* ("Bankruptcy Code") on June 19, 2015 ("Petition Date") in the United States Bankruptcy Court for the District of Delaware ("Delaware Bankruptcy Court");

**WHEREAS**, the bankruptcy proceedings of CES described in the immediately preceding paragraph are currently pending in the Delaware Bankruptcy Court and styled as *In re: Citadel Energy Services, LLC* (Case No. 15-11323 (KJC)) ("CES Bankruptcy Case");

**WHEREAS**, CES held a membership interest in Citadel H2O on the Petition Date ("Property");

**WHEREAS**, on August 6, 2015, Plaintiff filed an adversary proceeding ("Adversary Proceeding") against CES and Citadel H2O in the Delaware Bankruptcy Court (Adv. Proc. No. 15-51031 (KJC));

**WHEREAS**, on March 8, 2016, Plaintiff filed claim 26 in the amount of $1,129,065.13 and claim 28 in the amount of $7,500,000.00 in the CES Bankruptcy Case (collectively, the "Plaintiff's Claims");

**WHEREAS**, on March 11, 2016, EIG5 filed claim 30 in the amount of $2,100,000.00 in the CES Bankruptcy Case ("EIG5 Claim");

**WHEREAS**, CES has asserted that certain transfers were made by CES to Plaintiff in the year prior to the Petition Date (the "Alleged Preferential Transfers");

**WHEREAS**, as a result of thorough discussions and negotiations, the Parties have determined that it is in their best interests to resolve the disputes between them on the terms and conditions set forth in this Settlement Agreement.

**NOW THEREFORE**, for full and valuable consideration and on the terms, conditions and covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Consideration.** Plaintiff will pay to CES $10,000 on account of the Alleged Preferential Transfers, and CES will transfer the Property to Plaintiff, and Plaintiff and EIG5 will accept the Property from CES, in full satisfaction of the claims asserted against CES and Citadel H2O in the Adversary Proceeding, the Plaintiff's Claims and the EIG5 Claim.

2. **Assignment Agreement; Payment**. CES shall execute an Assignment and Assumption of Membership Interest in Citadel H2O, LLC ("Assignment Agreement") contemporaneously with the execution of this Settlement Agreement. Neither this Settlement Agreement nor the Assignment Agreement will be effective unless and until the Delaware Bankruptcy Court enters an order approving them ("Approval Order"), and such Approval Order is not appealed or stayed in any fashion. Upon filing of the Motion to Approve this Settlement Agreement with the Delaware Bankruptcy Court, Plaintiff will pay to CES $10,000, which funds will be held in escrow by counsel to CES pending entry of the Approval Order, and released to CES upon expiration of the appeal period to the Approval Order, and provided the Approval Order is not stayed in any fashion. If the Approval Order is not entered for any reason by February 28, 2017, counsel to CES shall immediately return the $10,000 to Plaintiff.

3. **Dismissal and Withdrawal of Claims**. If the Approval Order does not provide for the immediate dismissal of the Adversary Proceeding with prejudice, and immediately disallow the EIG5 Claim and the Plaintiffs' Claims, then within five (5) business days after the date on which the Approval Order becomes a final order, the Plaintiff shall dismiss the Adversary Proceeding with regard to any and all claims against CES in the Adversary Proceeding, the Plaintiff shall withdraw Plaintiff's Claims and EIG5 shall withdraw the EIG5 Claim. To the extent necessary, CES shall execute any paperwork required for the above-referenced dismissal and withdrawals.

4. **Release of Claims**. For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, CES, on behalf of itself and its affiliates, members, managers, agents, predecessors in interest, successors in interest, partners, attorneys, directors, officers, employees, insurers and representatives (the "CES Releasing Parties"), hereby releases and discharges Plaintiff, EIG5, and Citadel H2O, and each of their affiliates, members, managers, agents, predecessors in interest, successors in interest, partners, attorneys, directors, officers, employees, insurers and representatives (the "H2O Released Parties") from any and all claims, complaints, demands, liabilities, obligations, promises, and damages, of any nature whatsoever, in law or in equity, known or unknown, arising in contract, tort, statutory breach, or under any other legal right or duty, whether directly, indirectly, nominally, or beneficially possessed or claimed by the CES Releasing Parties against the H2O Released Parties.

Neither this release nor any other provision contained in this Settlement Agreement shall be deemed to prohibit CES, any other Debtor, the Official Committee of Unsecured Creditors, any subsequently appointed trustee, or any other entity from objecting to or otherwise challenging any proof of claim filed by the H2O Released Parties in these Chapter 11 cases. Rather, all rights to object to any such proofs of claim are expressly reserved.

5. **Claims Against Debtors' Estates**. Plaintiff and EIG5 waive any right they may have under Section 502(h) of the Bankruptcy Code to file a proof of claim (or to increase the amount set forth in an existing proof of claim) pursuant to any amounts or property exchanged as a result of this Settlement Agreement.

6. **Authority**. The individuals executing this Settlement Agreement on behalf of each Party warrant that they are of legal age, are legally competent, and have due authority to execute this Settlement Agreement on behalf of such Party.

7. **Governing Law**. This Settlement Agreement shall be interpreted and construed in accordance with the laws of the State of Delaware, without regard to its choice of law rules.

8. **Exclusive Jurisdiction**. Exclusive venue and jurisdiction for all claims arising out of or relating in any way whatsoever to this Settlement Agreement shall be vested in the federal and state courts located in the County of New Castle in the State of Delaware. The Parties waive any objection to the *in personam* jurisdiction, forum, venue, or convenience of such courts in any such action.

9. **Interpretation**. This Settlement Agreement shall be deemed to have been drafted jointly by all Parties and any rule pertaining to the construction of contracts resolving ambiguities against the drafting Party shall therefore not apply to the interpretation or construction of this Settlement Agreement. Paragraph headings are included for convenience only.

10. **Integration**. The Parties acknowledge and expressly agree that this Settlement Agreement and the Assignment Agreement, are fully integrated, that they represents the entire understanding of the Parties, that there are no other agreements, representations, promises or negotiations that have not been expressly embodied herein and therein, and that this Settlement Agreement and the Assignment Agreement supersede any and all prior agreements with respect to the subject matter hereof and thereof.

11. **Representations and Warranties; Attorneys' Fees**. Each of the Parties represents and warrants that it has carefully read this Settlement Agreement in its entirety; that it voluntarily assents to all the terms and conditions contained herein; that by signing the Settlement Agreement it is bound by the terms and conditions contained herein; and that it is signing this Settlement Agreement voluntarily and of its own free will. Each of the Parties further agrees that it shall be responsible for its own attorneys' fees and other fees incurred in connection with the Adversary Proceeding and the preparation and review of this Settlement Agreement.

12. **Severability**. Should any of the provisions herein be determined to be invalid by a court of competent jurisdiction, it is agreed that this shall not affect the enforceability of any other provision herein and that the Parties shall renegotiate in good faith that provision so determined to be invalid to effectuate the purpose of and to conform to the law regarding such provision.

13. **Counterparts; Electronic Signatures; Effectiveness**. This Settlement Agreement may be executed in counterparts by facsimile or other electronic signature, each of which shall be deemed to be an original, so that all of which when taken together shall constitute one and the same instrument. This Settlement Agreement shall become effective upon the entry of the Approval Order or as the terms of the Approval Order otherwise provide.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the date above first written.

**Citadel Energy Services, LLC**

By: _/s/_
Name: Edward T. Gavin, CTP
Title: Chief Restructuring Officer

**H2O Partners, LP**

By: _/s/ James E. Manley_
Name By: H2O-GP2, LLC
Its: General Partner
Title: Duly Authorized

**EIG5, LLC**

By: _____
Name:

Title:

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement as of the date above first written.

**Citadel Energy Services, LLC**

By:_____
Name:

Title:

**H2O Partners, LP**

By:_____
Name:

Title:

**EIG5, LLC**

By: *[signature]*
Name: Tim Racich
Title: managing member

## ASSIGNMENT AND ASSUMPTION OF
## MEMBERSHIP INTERESTS IN CITADEL H2O, LLC

This Assignment and Assumption of Membership Interests in Citadel H2O, LLC (this "Agreement") is made as of the 20th date of January, 2017, by and among Citadel Energy Services, LLC, a Delaware limited liability company, as assignor (the "Assignor"), and H2O Partners, LP, a Delaware limited partnership, as assignee (the "Assignee").

WHEREAS, the Assignor owns a membership interest (the "Membership Interest") in Citadel H2O, LLC, a Delaware limited liability company (the "Company");

WHEREAS, the Assignor (along with certain of its affiliated entities) is a debtor-in-possession in those certain jointly administered Chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (In re Citadel Watford City Disposal Partners, LP, Ch. 11 Case Nos. 15-11323-KJC, et al.) (the "Bankruptcy Cases," and the "Bankruptcy Court");

WHEREAS, the Assignee commenced an adversary proceeding in the Bankruptcy Cases by filing a complaint against Assignor and the Company, seeking the turn-over of certain assets held by the Company and claimed by Assignee (H2O Partners, LP v. Citadel Energy Services, LLC and Citadel H2O, LLC, Adv. Proc. No. 15-51031-KJC) (the "Adversary Proceeding");

WHEREAS, the Assignee has filed two Proofs of Claim in the Bankruptcy Cases, one in the amount of $7,500,000 and a second in the amount of $1,129,065.13 (the "H2O Proofs of Claim"), and one of Assignee's limited partners, EIG5, LLC, has also filed a Proof of Claim in the Bankruptcy Cases in the amount of $2,100,000 (the "EIG5 Proof of Claim," and together with the H2O Proofs of Claim, the "Proofs of Claim")

WHEREAS, the Assignor, Assignee and the Company have engaged in discovery and settlement discussion regarding the claims and defenses asserted in the Adversary Proceeding and the claims asserted in the Proofs of Claim;

WHEREAS, the Assignor and Assignee have agreed to settle and resolve all claims asserted in the Adversary Proceeding and the Proofs of Claim, and the parties are entering into a Settlement Agreement of even date herewith, which sets forth the terms and conditions of the settlement reached among the parties (the "Settlement Agreement");

WHEREAS, one of the provisions of the Settlement Agreement is that Assignor assign the Membership Interest to the Assignee;

WHEREAS, Assignor's entry into the Settlement Agreement, and the transfer of the Membership Interest from Assignor to Assignee, are subject to the approval of the Bankruptcy Court in the Bankruptcy Cases and the Adversary Proceeding;

WHEREAS, subject to approval of the Bankruptcy Court, the Assignor desires to transfer the Membership Interest to the Assignee, and the Assignee desires to accept the transfer of the Membership Interest, in accordance with the terms and conditions of this Agreement;

WHEREAS, Assignor is the Manager of the Company and has consented to the assignment and assumption of the Membership Interest to Assignee in accordance with the Company's Operating Agreement dated August 5, 2014 (the "Operating Agreement");

WHEREAS, Assignor is also transferring to Assignee all of its rights as a Manager of the Company, and upon the entry of an order of the Bankruptcy Court approving Assignor's entry into the Settlement Agreement and authorizing Assignor to enter into this Agreement, Assignor shall be deemed to have resigned as the Manager of the Company, without the need for any further action on behalf of Assignor, Assignee or the Company.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows, subject to Bankruptcy Court approval of the Settlement Agreement and authorization for Assignor to enter into this Agreement:

1. <u>Transfer of Membership Interest to Assignee</u>. The Assignor hereby assigns, transfers and delivers to the Assignee, free and clear of all liens, pledges, claims, rights of first refusal, options, charges, security interests, mortgages, or other encumbrances of any nature whatsoever, the Membership Interest, and Assignee hereby accepts transfer of the Membership Interest.

2. <u>Agreements of Assignee</u>. The Assignee, by execution hereof, agrees to be bound by all of the terms and conditions of the Operating Agreement from and after the date hereof, and agrees to assume all liabilities and obligations of the Assignee under the Operating Agreement as they relate to the Membership Interest from and after the date hereof.

3. <u>Amendment of Operating Agreement of Company</u>. Upon execution hereof, Exhibit A of the Operating Agreement shall be amended to reflect the transfer of the Membership Interests contemplated hereby, and the admission of the Assignee as a Member of the Company with respect to the Membership Interest transferred hereunder.

4. <u>Representations and Warranties</u>. Assignee represents and warrants to the Company and the other members of the Company (if any) that: (a) Assignee is acquiring the Membership Interest for investment purposes for Assignee's own account and not with a view to or for resale in connection with any distribution of all or any part of the Membership Interest; (b) Assignee has the financial ability to bear the economic risk of its investment in the Company, has adequate means of providing for its current needs and contingencies, and has no need for liquidity with respect to its investment in the Company; (c) Assignee has such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of an investment in

the Company and has obtained, in Assignee's judgment, sufficient information regarding the Company's business and prospects to evaluate the merits and risks of its investment; (d) in making its decision to purchase a Membership Interest, Assignee has been advised by its own business, tax, and legal advisers and is not relying on the Company or the other members with respect to the business, tax or legal considerations involved in such Assignee's investment; (e) Assignee understands and agrees that it must bear the economic risk of its investment for an indefinite period of time because, among other reasons, the Membership Interest has not been registered under the Securities Act or under the securities laws of certain states and, therefore, cannot be resold, assigned, or otherwise disposed of unless it is subsequently registered under the Securities Act and qualified under applicable securities laws of such states or an exemption from such registration and qualification is available; (f) Assignee has full power and authority to enter into this Agreement and the Operating Agreement and to perform its obligations hereunder and thereunder; (g) the authorization, execution, delivery and performance of this Agreement and the Operating Agreement by the Assignee does not and will not conflict with any other agreement or arrangement to which Assignee is a party or by which Assignee is bound; and (h) this Agreement, and upon execution the Operating Agreement, will each constitute a valid and binding agreement, enforceable against Assignee in accordance with its terms. Assignor and Assignee represent and warrant to each other that the transfer of the Membership Interest contemplated by this Agreement is being made in compliance with all laws and regulations, including securities laws applicable to Assignor and Assignee. Assignor represents to Assignee that the Membership Interest constitutes one hundred percent (100%) of Assignor's interest in the Company.

5. **Assignment**. This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. Nothing in this Agreement, expressed or implied, is intended or shall be construed to confer upon any person other than the parties, any successors and permitted assigns, any rights, remedy, or claim under or by reason of this Agreement or any provisions herein contained.

6. **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (without regard to its conflicts of law doctrines).

7. **Counterparts**. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

8. **Entire Agreement**. This Agreement, the Settlement Agreement, and the other documents and instruments referred to herein and therein, together with the Operating Agreement, embody the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein. This Agreement supersedes all prior agreements and understandings between the parties with respect to such subject matter.

9. **Severability**. If any one or more provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect, such

55884050.3                           3

invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first set forth above.

ASSIGNOR:

CITADEL ENERGY SERVICES, LLC

By: *Edward T. Gavin, CTP*
Its: *Chief Restructuring Officer*


ASSIGNEE:

H2O Partners, LP

*James E. Manley*
By: H2O-GP 2, LLC
Its: General Partner
Duly Authorized

55884050.3                                                                 4